IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| GUY M. ERVIN and § | | |
| TANIS ERVIN § | | PLAINTIFFS |
| § | | |
| v. § | | Civil Action No. 1:10cv333-HSO-JMR |
| § | | |
| THE NACHER CORPORATION, § | | |
| *et al.* § | | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT FILED BY DIAMOND OFFSHORE DRILLING, INC.; DIAMOND OFFSHORE MANAGEMENT COMPANY; AND DIAMOND OFFSHORE SERVICES COMPANY**

BEFORE THE COURT is the Motion for Summary Judgment [355] filed by Diamond Offshore Drilling, Inc.; Diamond Offshore Management Company; and Diamond Offshore Services Company, on March 15, 2012, on their Third-Party Claim against Liberty Mutual Insurance Company. Liberty Mutual has filed a Response [365] in opposition to the Motion, and the Diamond entities have filed a Rebuttal [376]. After consideration of the Motion, the related pleadings, the record, and the relevant legal authorities, the Court finds that the Diamond entities have not met their burden of showing that summary judgment is appropriate. Their Motion [355] should be denied.

I. BACKGROUND

A.  Facts

This dispute stems from an incident which occurred on March 28, 2009, where Plaintiff Guy M. Ervin purportedly sustained injuries aboard the D/S OCEAN TITAN. The D/S OCEAN TITAN was a "jack-up" drilling vessel. Plaintiffs

allege that the vessel was owned by Diamond Services, that it was berthed at Signal International, LLC's ["Signal"], shipyard for repairs and maintenance when the incident occurred, and that Diamond Management employees served aboard the vessel as its crew. Second Am. Compl. [252], at p. 3. Employees of Benchmark Instrumentation, Inc. ["Benchmark"],[1] were also aboard the D/S OCEAN TITAN to perform repair and/or maintenance services to the vessel's three main cranes. *Id.* Because Benchmark needed additional electricians to perform the necessary services to the cranes, Mr. Ervin's employer, Joe Gay Electrical Contractors, asked him to assist Benchmark in its work aboard the vessel. *Id.* at pp. 3–4. Mr. Ervin claims he was injured in a trip and fall aboard the vessel. *Id.*

B.  Relevant Procedural History

Plaintiffs Guy M. Ervin and Tanis Ervin filed their Complaint [1] on July 23, 2010, naming The Nacher Corporation ["Nacher"], Signal International, LLC ["Signal"], and Diamond Offshore Drilling, Inc. ["Diamond Drilling"], as Defendants. Plaintiffs filed a First Amended Complaint [150] on July 5, 2011, adding Diamond Offshore Services Company ["Diamond Services"] as a Defendant. A Second Amended Complaint [252] followed on October 5, 2011, naming Diamond Offshore Management Company ["Diamond Management"] as another Defendant.

---

[1]Benchmark was a Third Party Defendant, *see* Diamond Drilling's Third Party Compl. [23]; Liberty Mutual Insurance Company's Third Party Compl. [268], as well as a Third Party Claimant, *see* Benchmark's Counterclaim against Diamond Drilling [57]. Upon the request of the parties, the Court dismissed Diamond Drilling's Third Party Complaint against Benchmark, Benchmark's Counter-Claim against Diamond Drilling, and Liberty Mutual's Third Party Complaint against Benchmark. Order [108], at p. 1; Order [335], at p. 1.

Mr. Ervin asserts a negligence claim against Diamond Services in its capacity as owner of the D/S OCEAN TITAN, pursuant to 33 U.S.C. § 905(b). Alternatively, he advances a negligence claim under general maritime law against the Diamond entities, Signal, and Nacher. He further seeks to apply the principles of *respondeat superior* and *res ipsa loquitur* to hold Defendants liable. Mrs. Ervin raises loss of consortium and society claims. Upon Plaintiffs' *ore tenus* motion, their claims against Signal were dismissed with prejudice by Order [368] entered August 13, 2012.

Of relevance here, on February 7, 2011, Diamond Drilling filed a Third Party Complaint [23] against Benchmark and Lexington Insurance Company. It contended that, pursuant to a Master Service Agreement ["MSA"] between it and Benchmark, Benchmark was required to defend, indemnify, and hold harmless Diamond Drilling and others from and against any claims made by Benchmark, its affiliated companies, subcontractors, or their employees. Third Party Compl. [23], at p. 2.

On April 7, 2011, Benchmark filed a Counterclaim [57] against Diamond Drilling, alleging that Diamond Drilling breached its contractual obligations to Benchmark under the MSA. Benchmark filed an Amended Counterclaim [75] on April 20, 2011, again asserting its breach of contract claim against Diamond Drilling. Upon the Motions of Diamond Drilling and Benchmark, on June 6, 2011, the Court dismissed Diamond Drilling's Third Party Complaint against Benchmark and Lexington, as well as Benchmark's Counterclaim against Diamond Drilling,

without prejudice. Order [108], at p. 1. In its Response [365] to the present Motion for Summary Judgment [355], however, Liberty Mutual contends that "[i]t is undisputed that Lexington Insurance Company has accepted coverage under its insurance policy for the benefit of Diamond and is providing a defense to the claims asserted against Diamond at Lexington's expense." Resp. [365], at p. 2.

Diamond Drilling and Diamond Services also filed a Third Party Complaint [191] against Liberty Mutual based upon a commercial general liability insurance policy [the "Policy"] issued to them by Liberty Mutual. They assert a breach of contract claim for Liberty Mutual's failure to defend and indemnify for any and all claims asserted against them in this case, as purportedly required by the Policy. Third Party Compl. [191], at p. 3.[2] The Third Party Complaint seeks a declaratory judgment that Liberty Mutual is "legally obligated to defend and indemnify the Diamond Offshore Companies against any and all claims against the Diamond Offshore Companies in this matter." *Id.* at p. 5.

The Diamond entities filed their Motion for Summary Judgment [355] on March 15, 2012. They generally request judgment on their Third Party Complaint [191] against Liberty Mutual Insurance Company. Specifically, they seek a declaratory judgment that they are entitled to "a defense, indemnification, and

---

[2]In addition to Plaintiffs' and Benchmark's claims, The Nacher Corporation also filed a claim against the Diamond entities. It filed a Crossclaim [162] against Diamond Drilling and Diamond Services on July 18, 2011, and an Amended Crossclaim [266] against Diamond Services and Diamond Management on October 18, 2011. Both Nacher's and Benchmark's claims related to Diamond's purported failure to defend and indemnify those entities. Counterclaim [57], at pp. 4–6; Am. Crossclaim [266], at pp. 11–12.

coverage from Liberty Mutual with respect to Plaintiffs' claims in this case." Mem. in Supp. of Mot. for Summ. J. [356], at p. 11.

## II. DISCUSSION

A.  Scope of the Motion for Summary Judgment

In their Third Party Complaint [191] against Liberty Mutual, Diamond Drilling and Diamond Services seek generally a declaratory judgment that Liberty Mutual is "legally obligated to defend and indemnify the Diamond Offshore Companies against any and all claims against the Diamond Offshore Companies in this matter." *Id.* at p. 5. However, the Diamond entities' Motion for Summary Judgment [355] presents a narrower question. The Motion states that

> [t]here are no genuine issues of material fact that the Commercial General Liability Policy issued by Liberty Mutual to Diamond includes a blanket Onshore Location Endorsement, which entitles Diamond to a defense, indemnification, and coverage from Liberty Mutual *as to Plaintiffs' claims in this lawsuit*.
> * * *
> Diamond has defended against *Plaintiffs' claims in this case* because Liberty Mutual unjustifiably denied coverage. Accordingly, Diamond is also entitled to recover reasonable attorney's fees and costs from Liberty Mutual.

Mot. for Summ. J. [355], at pp. 1–2 (emphasis added).

The Diamond entities' supporting brief likewise focuses only on the issue of coverage purportedly owed by Liberty Mutual with respect to Plaintiffs' claims in this case. Mem. in Supp. of Mot. for Summ. J. [356], at pp. 1–2, 11. While their Rebuttal [376] attempts to expand the relief sought to include coverage with respect to all claims asserted against them in this litigation, the narrow question properly

-5-

before the Court is the one addressed in the Motion itself, and in Liberty Mutual's Response [365], which is whether summary judgment is appropriate on the Diamond entities' third party claim against Liberty Mutual as to Plaintiffs' claims.

B.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

C.  Analysis

The parties do not contest that Liberty Mutual initially denied the Diamond entities' claim. Diamond entities maintain that the denial was the result of some confusion on Liberty Mutual's part due to its failure to timely issue two endorsements to the Policy, Endorsement Numbers 38 and 39. Mem. in Supp. of Mot. for Summ. J. [356], at p. 6. There does not appear to be any dispute that these endorsements were intended to be in effect from the date of the Policy's inception on May 1, 2008. However, they were not issued until October 18, 2010, after this lawsuit was filed. *Id.* The Policy indicates that the effective date of Endorsement Numbers 38 and 39 was May 1, 2008, prior to the date of Mr. Ervin's alleged injury. Policy [355-6], at pp. 55–56. The parties further seem to agree that, based upon the

coverage provisions in effect at the relevant time, Plaintiffs' claims would be covered under the terms of the Policy, subject to all of its conditions, limitations, and endorsements. Resp. [365], at p. 2. Based on the foregoing, the Diamond entities maintain that they are entitled to summary judgment on their third party claim against Liberty Mutual with respect to the claims asserted against them by Plaintiffs.

Liberty Mutual responds that, since its initial denial, it has "reassessed its position." Resp. [365], at p. 2. Liberty Mutual now relies upon the "other insurance" provision of the Policy. It argues that it has no duty to defend the Diamond entities because Lexington is providing a defense to Plaintiffs' claims against them, under both the MSA between the Diamond entities and Benchmark and Lexington's policy issued to Benchmark, which listed Diamond Drilling and others as additional named assureds. *Id.*; *see* Policy [355-6], at pp. 68–69; *see also* MSA [355-2], at p. 2. Liberty Mutual contends that its Policy is excess to any coverage Benchmark has, including that afforded by Lexington. Resp. [365], at pp. 3–4. Liberty Mutual raised this "other insurance" issue as an affirmative defense in its Answer [251] to the Third Party Complaint. Answer [251], at p. 12.

The Diamond entities counter that Liberty Mutual's "other insurance" argument is not properly before the Court. Rebuttal [376], at p. 2. However, this affirmative defense is clearly relevant to the coverage question before the Court. *See, e.g., U.S. Fidelity & Guar. Co. v. Coastal Refining & Marketing, Inc.*, - - - S.W.3d - - - -, 2012 WL 1087532, *10 (Tex. App. April 3, 2012) (excess insurers do

not contribute until the primary policies are exhausted).[3]

As with contracts, clear and unambiguous insurance policies will be enforced as written. *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 403 (Miss. 1997); *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). The question presented is whether Liberty Mutual owed duties to defend and to indemnify the Diamond entities under the circumstances. *See* Mot. [355], at pp. 1–2. These are distinct and separate duties. *Ass'n of Trial Lawyers Assur. v. Tsai*, 879 So. 2d 1024, 1028 (Miss. 2004), *overruled on other grounds by Zurich American Ins. Co. v. Goodwin*, 920 So. 2d 427, 436 n.3 (Miss. 2006); *Utica Nat. Ins. Co. of Texas v. American Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) (quoting *King v. Dallas Fire Ins. Co.*, 85 S.W. 3d 185, 187 (Tex. 2002)). Whether an insurance company has a duty to defend depends on the language of the policy and the allegations in the underlying complaint. *Delta Pride Catfish*, 697 So. 2d at 403; *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). The duty to indemnify arises from the actual facts which establish liability in the underlying suit. *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins.*, 647 F.3d 524, 531 (5th Cir. 2011) (applying Mississippi law); *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009).

---

[3]The parties have not addressed the issue of which law the Court should apply. The Policy does not contain a choice of law provision. Nor does there appear to be an available federal maritime rule which controls. The Policy was issued and delivered in Texas, while the incident occurred, and this Court sits, in Mississippi. In their briefing, the parties have relied upon cases applying Mississippi law. *See, e.g.,* Mem. in Supp. of Mot. for Summ. J. [356], at pp. 8, 11; Resp. [365], at p. 3. The Court need not resolve this question, since the result appears to be the same under either Texas or Mississippi law.

1. Duty to Defend

The Policy provides, in relevant part, that,

> [w]hen this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit." If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Policy [355-6], at p. 68. When the Third Party Complaint [191] was filed on August 26, 2011, Diamond Drilling had apparently already settled its claim with Lexington for defense under the Benchmark policy. *See* Order [108], at p. 1 (dated June 6, 2011, dismissing without prejudice Diamond Drilling's Third Party Complaint against Benchmark and Lexington, and Benchmark's Counterclaim against Diamond Drilling). It appears that at least one other insurance company may be defending the Diamond entities. Based on the clear language of the Policy and the evidence submitted, the Diamond entities have not met their burden of showing that Liberty Mutual's defense duty was ever triggered with respect to the claims asserted against them by Plaintiffs. The Court is not persuaded that the Diamond entities have carried their burden of demonstrating that Liberty Mutual was, or is, under any obligation to defend them, or that they are entitled to judgment as a matter of law on this claim. *See Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529–531 (5th Cir. 2011) (applying Mississippi law, and holding that, because insurer's duty to defend arose only after the actual payment of judgments or settlements had exhausted any underlying insurance, and that condition precedent was never satisfied, excess insurer's defense duty was never

triggered); *American Indem. Lloyds v. Travelers Property & Cas. Ins. Co.*, 335 F.3d 429, 443 (5th Cir. 2003) (holding that the general rule, well established in Texas, is that the excess liability insurer is not obligated to participate in the defense until the primary limits are exhausted); *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 173 (Tex. App. 2008) (holding that duties to defend and indemnify were not triggered until self-insured retention limits were exhausted).

2. Duty to Indemnify

As stated earlier, the duties to defend and to indemnify are distinct. "[A]n insurer may have a duty to defend but, eventually, no duty to indemnify." *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997); *see Moeller v. American Guar. and Liability Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996) (insurer may have a duty to defend "whether the claim later proves to be meritorious or not"). The duty to indemnify arises only if the facts actually established in the underlying suit amount to a covered claim. *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins.*, 647 F.3d 524, 531 (5th Cir. 2011) (applying Mississippi law); *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009). Liberty Mutual argues that because any "loss" has not yet been determined, summary judgment is inappropriate on this claim at this time. Resp. [365], at p. 2.

The Policy provides that

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:
    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

> > (b) The total of all deductible and self-insured amounts under all that other insurance.
> (4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Policy [355-6], at p. 69.

The duty to indemnify "generally arises only after an insured has been adjudicated, whether by judgment or settlement, to be legally responsible for damages that are covered by the policy." *Willbros RPI, Inc. v. Continental Cas. Co.*, 601 F.3d 306, 313 (5th Cir. 2010) (citing *Collier v. Allstate County Mut. Ins. Co.*, 64 S.W.3d 54, 62 (Tex. App. 2001)). Neither the Diamond entities' liability nor the amount of the loss has been determined. Nor has the Court been presented with any evidence pertaining to the total amount that all other insurance would pay for any loss, or with the total of all deductible and self-insured amounts under all such other insurance. *See* Policy [355-6], at p. 69. Under the particular circumstances of this case, the facts necessary to ascertain whether a duty to indemnify has arisen cannot be known until the question of liability, as well as other questions, are resolved. The indemnity issue is not ripe, and is therefore non-justiciable at present. *See Willbros RPI,* 601 F.3d at 313; *see also Barden Mississippi Gaming L.L.C. v. Great Northern Insurance Co.*, 576 F.3d 235, 239–40 (5th Cir. 2009). The Diamond entities have not met their burden of demonstrating that they are entitled to judgment as a matter of law on this claim.

### III. CONCLUSION

For the reasons stated herein, the Court finds that summary judgment would be inappropriate at this time. The Diamond entities' Motion for Summary Judgment [355] should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated herein, the Motion for Summary Judgment [355] filed by Diamond Offshore Drilling, Inc.; Diamond Offshore Management Company; and Diamond Offshore Services Company on March 15, 2012, against Liberty Mutual Insurance Company, is **DENIED**.

**SO ORDERED AND ADJUDGED,** this the 11th day of July, 2012.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE